UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED HEALTHCARE SERVICES, INC. and UNITEDHEALTH GROUP, INC., | Civil No. 20-2696 (JRT/ECW) |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER DENYING PRELIMINARY INJUNCTION** |
| v. | |
| CARLOS LOURO, | |
| Defendant. | |

Jenny Gassman-Pines and Anna Tobin, **GREENE ESPEL PLLP**, 222 South Ninth Street, Suite 2200, Minneapolis, MN 55402, for plaintiffs.

Joel P. Schroeder and Katherine S. Barrett Wiik, **BEST & FLANAGAN LLP**, 60 South Sixth Street, Suite 2700, Minneapolis, MN 55402, for defendant.

Plaintiffs, United HealthCare Services, Inc. and UnitedHealth Group, Inc. filed a Motion for Preliminary Injunction against former employee, Defendant Carlos Louro, seeking to enjoin Louro from (1) assuming his planned role at competitor Anthem, Inc. or any other role that breaches the restrictive covenants in his stock options and restricted stock unit agreements for a period of twelve months; and (2) using or disclosing Plaintiffs' trade secrets or confidential information.

Because the Court finds that Plaintiffs have not demonstrated a likelihood of success on the merits or irreparable harm and because the balance of harms favors Louro, the Court will deny Plaintiffs' motion.

## BACKGROUND

### I. THE PARTIES

Plaintiff UnitedHealth Group, Inc. ("UHG") is a Delaware corporation with its principal place of business in Minnesota. (Compl. ¶ 6, Dec. 30, 2020, Docket No. 1.) UHG is a diversified health care company that offers health care coverage as well as information and technology-enabled health services through its affiliated companies. (*Id.* ¶ 9.) Plaintiff United HealthCare Services, Inc. ("United") is an affiliate and wholly owned subsidiary of UHG and a Minnesota corporation with its principal place of business in Minnesota. (*Id.* ¶ 6.) United is UHG's health care benefits business, offering a wide range of health care coverage for individuals, employers, and government-subsidized beneficiaries. (*Id.* ¶ 9.)

At United, responsibility for underwriting and pricing models is divided into different business segments, which include: National Accounts (accounts that primarily service 3,000 or more lives); Local Markets (public-sector and regional-based accounts); Key Accounts (less than 3,000 lives), and "other markets.". (*Id.* ¶¶ 12–15.)

Defendant Carlos Louro began working for United in December 2005 and for most of his tenure he managed underwriting in National Accounts. (Compl. ¶ 19.) Louro worked from Connecticut but maintained close contact with members of his team and United's actuarial team in Minnesota and regularly traveled to Minnesota to fulfill his job duties. (Compl. ¶¶ 20–21.) In February 2019, Louro was promoted to Vice President of Underwriting in the National Accounts segment, which gave him responsibility for business pricing for United's national accounts, overseeing the Aon/Hewitt Health Exchange, and specialty businesses. (Compl. ¶ 25.) Louro was also elected to United's National Accounts Leadership Council, a high-level strategy group that addressed issues across United's national accounts systems. (Compl. ¶ 29.)

## II. THE AGREEMENTS

At multiple points in Louro's employment at United, he was rewarded with UHG stock options and restricted stock units via documented contracts ("Option Awards" and "RSU Awards," collectively the "Agreements"), which contained restrictive covenants for the benefit of UHG and United. (Compl. ¶¶ 30–33; Decl. of Albert A. Martino ("Martino Decl.") ¶ 29, Ex. A ("Option Award") § 4, Dec. 30, 2020, Docket No. 7-1; Martino Decl. ¶ 29, Ex. B ("RSU Award") § 8, Dec. 30, 2020, Docket No. 7-1.)

### A. Confidentiality Clauses

The Agreements prohibit Louro from "disclos[ing] or us[ing] Confidential Information, either during or after [Louro's] employment with the Company, except as

-3-

necessary to perform [Louro's] duties or as the Company may consent in writing." (Option Award § 4(a); RSU Award § 8(a).)  Examples of confidential information include: inventions; new product or marketing plans; business strategies and plans; merger and acquisition targets; financial and pricing information; computer programs, source codes, models and databases; analytical models; customer lists and information; and supplier and vendor lists and other information which is not generally available to the public. (Option Award § 4(a); RSU Award § 8(a).)

### B. Non-Competition Clauses

The Agreements also restrict Louro from "[e]ngag[ing] in or participat[ing] in any activity that competes, directly or indirectly, with any Company activity, product, or service that [Louro] engaged in, participated in, or had Confidential Information about during [Louro's] last 36 months of employment with the Company" or assist anyone in any of those activities for one year after Louro's termination of employment. (Option Award § 4(c); RSU Award § 8(c).)

### C. Scope

The restrictive covenants "apply on a nationwide basis anywhere in the United States." (Option Award § 4(d); RSU Award § 8(d).).

### D. Choice of Law

The most recent RSU Award and Option Award include a Delaware choice-of-law clause, (*see, e.g.*, RSU Award § 11(h)); prior Agreements Louro executed contain Minnesota choice-of-law clauses, (Compl. ¶ 37 n.1).

### E. Injunctive Relief

The Agreements also state that: "[Louro] agrees that (a) legal remedies (money damages) for any breach of the Restrictive Covenants. . . will be inadequate, (b) the Company will suffer immediate and irreparable harm from any such breach, and (c) the Company will be entitled to injunctive relief from a court in addition to any legal remedies the Company may seek in arbitration." (Option Award § 12; *see also* RSU Award § 11(f).)

### F. Forfeiture

Both Agreements provide that Louro forfeits all or a portion of the restricted stock units or shares of common stock and may be required to repay United and UHG for the value realized if he violates the restrictive covenants in the Agreements. (Option Award § 3; RSU Award § 7.) The forfeiture clauses also allow the Company to pursue other legal or equitable remedies for violations of the Restrictive Covenants. (Option Award § 3; RSU Award § 7.)

## III. LOURO'S EMPLOYMENT

Louro has accepted a position at Anthem, a United competitor, as Vice President of Local Accounts Underwriting. (Decl. of Carlos Louro ("Louro Decl.") ¶¶ 16, 18, 21, Jan. 21, 2021, Docket No. 25.) Prior to interviewing with Anthem, Louro affirmatively

disclosed that he had a non-compete with United and provided Anthem a copy of the non-compete language on September 30, 2020. (*Id.* ¶ 19.) Anthem analyzed Louro's non-compete agreement to determine first if it could hire him and then if it could structure a position for Louro that would honor the non-compete and avoid overlap with the business segments Louro worked in at United, including National Accounts, the Aon/Hewitt Exchange, Specialty, and Public Sector. (*Id.* ¶ 20; Decl. of Andrea Schell ("Schell Decl.") ¶¶ 6–7, Jan. 21, 2021, Docket No. 26.) Anthem structured a position for Louro in Anthem's Local Accounts segment—which services accounts up to 3,000 lives and is a corollary to United's Key Accounts segment—so that Louro would not provide any services for or rely on any confidential information related to Anthem's National Accounts (3,000+ lives). (Schell Decl. ¶ 7.)

Louro resigned from United on December 3, 2020 and disclosed to his boss, Albert Martino, that he had accepted an underwriting role at Anthem in Local Accounts. (Louro Decl. ¶ 22.) United's in-house counsel, Nora Kaitfors, sent a letter to Louro on December 7, 2020 reminding him of the restrictive covenants and expressing concern that the new job placed him in a position to use United's confidential information. (Decl. of Joel P. Schroeder ("Schroeder Decl.") ¶ 6, Ex. 5 at 46–47, Jan. 21, 2021, Docket No. 24-1.) Anthem informed United on December 18, 2020 that Louro's responsibilities at Anthem would not overlap with those he held at United, that Louro would be provided with written notification that any improper use of United's confidential information during his

employment at Anthem would result in termination from Anthem,[1] and that Anthem would ask Louro in writing to acknowledge that he had not retained any documents containing United's confidential information. (Schroeder Decl. ¶ 8, Ex. 6 at 52, Jan. 21, 2021, Docket No. 24-1.) However, the parties have been unable to reach an agreement. (Meet & Confer Stmt., Dec. 30, 2020, Docket No. 8.)

**IV. PROCEDURAL BACKGROUND**

Plaintiffs filed a Complaint on December 30, 2020 alleging four counts: (1) breach-of-contract; (2) violation of the Defend Trade Secrets Act (18 U.S.C. § 1836); (3) violation of the Minnesota Trade Secrets Act (Minn. Stat. § 325C.01 *et seq.*); and (4) violation of the Delaware Uniform Trade Secrets Act (6 De. Code § 2000 *et seq.*). (Compl. ¶¶ 51–86.)

On December 30, 2020, Plaintiffs filed a Motion for Preliminary Injunction requesting that the Court:

> (1) Enjoin Louro from "assuming his planned role at Anthem, Inc. or any other role that breaches the restrictive covenants in his agreements for UHG stock opinions and restricted stock units (the "Agreements") for a period of 12 months from the date the Order is entered; and

---

[1] Specifically, Anthem committed to advising Louro that "as a condition of employment, you are expressly prohibited from providing or disclosing to Anthem, or any of its subsidiaries and related entities, and from relying upon or utilizing in the provision of services to Anthem, any confidential or proprietary information of United. Instead, you are expected to utilize only your general skills, knowledge and abilities gained over the course of your education, career, and business experiences. Any improper use or disclosure of confidential or proprietary information of another entity would be the basis for immediate termination of your employment." (Schroeder Decl., Ex. 6 at 52.)

  (2) Enjoin Louro from "using or disclosing Plaintiffs' trade secrets or confidential information."

(Mot. Prelim. Inj., Dec. 30, 2020, Docket No. 4.) On January 7, 2021, the Court issued a Temporary Restraining Order to preserve the status quo until the Court could rule on Plaintiffs' pending preliminary injunction motion. (TRO, Jan. 7, 2021, Docket No. 18.) The TRO enjoined Louro from using or disclosing Plaintiffs' trade secret or confidential information to Anthem or any other party and ordered Louro to notify United three days prior to commencing employment at Anthem. (*Id.* at 2.)

## DISCUSSION

### I. STANDARD OF REVIEW

Whether a preliminary injunction should issue turns upon: (1) the probability of the movant succeeding on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between this harm and the injury that granting the injunction will inflict on the non-movant; and (4) the public interest. *Dataphase Sys. Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc).

The core question is "whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Id.* at 113. "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries

the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quotation omitted).

## II.  ANALYSIS

### A.  Likelihood of Success on the Merits

Plaintiffs must demonstrate a "fair chance of prevailing" on the merits of an underlying claim. *Planned Parenthood Minnesota, North Dakota, South Dakota v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008). To do so, Plaintiffs must demonstrate a likelihood of success on at least one, but not all, of their claims. *See United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 742–43 (8th Cir. 2002).

#### 1.  Breach of Contract

Restrictive covenants are enforceable in Minnesota only if they are reasonable, which requires the Court to assess: (1) whether or not the restraint is necessary for the protection of the business or goodwill of the employer; (2) whether the restraint is greater than reasonably necessary to protect the employer's business; (3) the duration of the restriction; and (4) the territorial scope of the restriction. *Prow v. Medtronic, Inc.*, 770 F.2d 117, 120 (8th Cir. 1985) (quoting *Bennett v. Storz Broad. Co.*, 134 N.W.2d 892, 899 (Minn. 1965)). Where a non-compete covenant "is not ancillary to the initial employment contract, it can be sustained only if supported by independent consideration." *Nat'l Recruiters, Inc. v. Cashman*, 323 N.W.2d 736, 740 (Minn. 1982) (citing *Modern Controls, Inc. v. Andreadakis*, 578 F.2d 1264 (8th Cir. 1978)). To be enforceable under Delaware law,

restrictive covenants must "(1) meet general contract law requirements, (2) be reasonable in scope and duration, (3) advance a legitimate economic interest of the party enforcing the covenant, and (4) survive a balance of the equities." *TP Group-CI, Inc. v. Vetecnik*, No. 16-0623, 2016 WL 5864030, at *2 (D. Del. Oct. 6, 2016) (quoting *Tristate Courier & Carriage, Inc. v. Berryman*, No. C.A. 20574, 2004 WL 835886, at *10 (Del. Ch. Apr. 15, 2004).[2]

Here, the parties acknowledge that Louro signed the Agreements and received consideration in the form of equity. The Court finds that the twelve-month duration and territorial scope of the non-compete restriction are undoubtedly reasonable, given Plaintiffs' nationwide business dealings. *See, e.g.*, *Hulsenbusch v. Davidson Rubber Co.*, 344 F.2d 730, 736 (8th Cir. 1965). Further, United has a clear legitimate interest in protecting its confidential and proprietary strategic information and maintaining its market position.

Plaintiffs argue that their interpretation of the scope of the non-compete is reasonable because the non-compete specifically prohibits competition with activities, products, and services that Louro engaged in, participated in, or had confidential information about. Although Louro disclosed his non-compete prior to interviewing with Anthem and Anthem tailored a job to comply with Louro's non-compete, Plaintiffs claim

---

[2] Because Plaintiffs have presented no facts suggesting that Louro has disclosed or used any of their confidential information, the Court finds that Plaintiffs are unlikely to prevail on a breach of contract claim related to the confidentiality clause and thus will focus only on the non-compete clause.

that these efforts are insufficient because Anthem's proposed position only insulates Louro from business segments that he was responsible for (national accounts, the Aon/Hewitt Exchange, etc.) rather than activities that he engaged in (underwriting and corporate strategy).

However, the Agreements do not define "activities," "engaged in," or "participated in" and widely restrict any direct or indirect competition with Louro's previous activities. This broad language appears to give Plaintiffs wide interpretive latitude and could be particularly limiting for an executive, like Louro, who engaged even on the fringes of discussions related United's corporate strategy. The Court has concerns that, without a more precise definition, the prohibited business activity in the non-compete agreement goes too far and is likely unreasonable unless interpreted more narrowly.

United claims that its underwriting and pricing strategy is coordinated and unified across business segments, thus prohibiting Louro from working in a similar role in a different business segment at Anthem. Louro disputes this characterization, asserting that business segments at United are siloed, coordination across segments occurs only on rare occasions, and that it is very rare for underwriters to move between segments because the training and pricing models are specialized for each segment.

Regardless of the contours of this fact dispute, United itself demonstrates the breadth of the restraint when it states that Louro could only work in healthcare or underwriting without violating the restriction if he works exclusively on Medicare and

-11-

Medicaid products and is insulated from all other business segments. The Court finds that Plaintiffs' interpretation of the covenant is broader than reasonably necessary to protect Plaintiffs' business and is not supported by the balance of the equities.

Louro plans to work at Anthem in a different role and in a different business segment than the position he held at United. Anthem has attested that Louro's new position will not provide any services for or use any confidential information related to Anthem's National Accounts segment, and that Louro will not work on the Aon/Hewitt Exchange or in the Specialty and Public Sector segments. To find that Louro breached the restrictive covenant, a court would have to read the covenant so broadly as to render it unenforceable. Plaintiffs have not demonstrated that Louro's work at Anthem will be competing directly or indirectly with his prior role at United. The Court is, therefore, not convinced that a strong claim for breach of contract exists here. Accordingly, the Court finds that Plaintiffs are unlikely to prevail on the breach of contract claim at this time.

**2. Trade Secrets Claims**

The Defend Trade Secrets Act ("DTSA") creates a private right of action for an owner of a trade secret when that secret has been misappropriated, if the secret relates to a product used in interstate commerce. 18 U.S.C. § 1836(b). Under the DTSA, Minnesota Uniform Trade Secrets Act ("MUTSA"), Minn. Stat. § 325C.01, subd. 5, and Delaware Uniform Trade Secrets Act ("DUTSA"), 6 Decl. C. § 2001(4), information qualifies as a trade secret if the owner has taken reasonable measures to keep such information

secret and the information has economic value. *CMI Roadbuilding, Inc. v. Iowa Parts, Inc.*, 920 F.3d 560, 564 (8th Cir. 2019) (DTSA); *Elenza, Inc. v. Alcon Labs. Holding Corp.*, 183 A.3d 717, 721 (Del. 2018) (DUTSA); *Goodbye Vanilla, LLC v. Aimia Proprietary Loyalty U.S. Inc.*, 304 F. Supp. 3d 815, 820 (D. Minn. 2018) (MUTSA).

Pursuant to the DTSA and MUTSA, misappropriation essentially means "acquisition, disclosure, or use of another's trade secrets by improper means." *CPI Card Group, Inc. v. Dwyer*, 294 F. Supp. 3d 791, 807–08 (D. Minn. 2018) (quotation omitted). Improper means include "theft bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." *Id.* at 808. Under Delaware law, to prove misappropriation, the plaintiff must demonstrate that "(1) a trade secret exists; (2) the plaintiff communicated the secret to the defendant; (3) there was an express or implied understanding that the secrecy of the matter would be respected; and (4) the secret information was improperly used or disclosed to the injury of the plaintiff." *Elenza*, 183 A.3d at 721.

Plaintiffs adopt a theory of "inevitable disclosure" to argue that they are entitled to relief "regardless of whether misappropriation has already occurred or inevitably will occur." *Prime Therapeutics LLC v. Beatty*, 354 F. Supp. 3d 957, 969 (D. Minn. 2018); *see also UtiliSave, LLC v. Miele*, C.A. No. 10729-VCP, 2015 WL 5458960, at *9 (Del. Ch. Sept. 17, 2015). Plaintiffs argue that, because Louro cannot unlearn United's pricing strategies, formulas, and pricing factors, he will be unable to perform his role at Anthem without

using and disclosing United's trade secrets. However, to succeed on this theory "the moving party must show that there is a high degree of probability of inevitable disclosure." *Lexis-Nexis v. Beer*, 41 F. Supp. 2d 950, 958 (D. Minn. 1999) (quotation omitted). "Mere knowledge of a trade secret is not enough, even where the person with such knowledge takes a comparable position with a competitor." *Katch, LLC v. Sweetser*, 143 F. Supp. 3d 854, 870 (D. Minn. 2015).

Courts consider several factors to determine whether a movant has demonstrated the likelihood of inevitable disclosure, including the degree of competition between the current and former employers; the extent to which the employee's new position is similar to the position they held with the former employer; the actions that the new employer has taken to prevent the employee from using or disclosing the former employer's trade secrets; and whether the movant has demonstrated any wrongdoing or nefarious motives on the part of the employee. *See Prime Therapeutics*, 354 F. Supp. 3d at 970.

Here, Plaintiffs have demonstrated neither misappropriation under the DTSA and MUTSA, nor improper use or disclosure under Delaware law, and their pleadings do not meet the high bar for inevitable disclosure. United and Anthem are certainly competitors, but Louro's position at Anthem is significantly different from his position at United. Further, the Court relies upon Anthem's and Louro's representations that both parties will take affirmative measures to prohibit Louro from disclosing any of United's proprietary information, levying possible termination from his position at Anthem as a

deterrent. United has also not demonstrated any nefarious motives on Louro's part. United must show more to warrant injunctive relief. Accordingly, the Court finds that Plaintiffs are unlikely to prevail on their trade secret claims.

### B. Threat of Irreparable Harm to the Movant

"Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). Under Delaware law, "contractual stipulations as to irreparable harm alone suffice to establish that element for the purposes of issuing preliminary injunctive relief." *Cirrus Holding Co. v. Cirrus Indus., Inc.*, 794 A.2d 1191, 1209 (Del. Ch. 2001). However, such a provision does not deprive a court of its sound discretion to determine whether a preliminary injunction is warranted. *Id.* at 1211; *AM Gen. Holdings LLC. v. The Renco Group, Inc.*, C.A. No. 7639-VCN, 2016 WL 787929, at *2 (Del. Ch. Feb. 19, 2016).

In Minnesota, a moving party "must show that the harm is **certain** and **great** and of **such imminence** that there is a clear and present need for equitable relief." *Roudachevski v. All-American Care Ctrs., Inc.*, 648 F.3d 701, 706 (8th Cir. 2011) (emphasis added) (quotation omitted)). "Breach of a covenant not to compete, standing alone, 'does not . . . readily indicate irreparable injury to the employer.'" *St. Jude Med., Inc. v. Carter*, 913 N.W.2d 678, 685 (Minn. 2019) (quotation omitted). Courts have inferred irreparable harm from the breach of a valid restrictive covenant where an employer

stands to lose valuable business relationships or goodwill, *see United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 741 (8th Cir. 2002), but have been less likely to infer harm on the basis of loss of market share or inevitable disclosure of trade secrets, *see Travelers Express Co., Inc. v. Transaction Tracking Techs., Inc.*, 305 F. Supp. 2d 1090, 1094–95 (D. Minn. 2003); *Prime Therapeutics*, 354 F. Supp. 3d at 974.

Plaintiffs allege that the threat of Louro's employment with Anthem is not just a loss of sales or customers that could be quantified through monetary damages, but the tangible threat of Anthem gaining access to the proprietary and confidential formulas and strategies of a direct competitor, and thereby gaining a market advantage that undercuts United's position. But the Court has determined that Plaintiffs have not shown a likelihood of inevitable disclosure, and Louro and Anthem have both independently affirmed that Louro is prohibited from using, sharing, or relying upon United's confidential or proprietary information in his role at Anthem. Further, the Court has found that Plaintiffs are unlikely to prevail on their breach of contract claim and that restraining Louro from his proposed role at Anthem is not reasonably necessary to protect United's legitimate business interests. Accordingly, Plaintiffs have not demonstrated the irreparable harm necessary for a preliminary injunction. Money damages are likely adequate to compensate United in the event that the agreements are found to have been breached.

**C. Balance of Harms**

"The balance-of-harms factor involves 'assess[ing] the harm the movant would suffer absent an injunction," as well as the harm the other parties "would experience if the injunction issued.'" *Midwest Sign & Screen Printing Supply Co. v. Dalpe*, 386 F. Supp. 3d 1037, 1057 (D. Minn. 2019) (quoting *Katch, LLC*, 143 F. Supp. 3d at 875).

United would undoubtedly suffer harm if their confidential or proprietary data were disclosed to Anthem. However, both Anthem and Louro have attested that Louro will be prohibited from sharing, using, or relying upon United's confidential data; and both parties have committed that Louro will regularly certify that he has not used any of Plaintiffs' data in the course of his work for Anthem. Further, Louro has agreed to the condition of termination from Anthem should he disclose or use any of Plaintiffs' confidential data. The forfeiture clauses in the Agreements, which provide that Louro forfeits his equity benefits if he violates the restrictive covenants, provide an additional incentive for Louro to remain in compliance.

Plaintiffs have presented no evidence or explanation as to why the Court should not accept Anthem's and Louro's representations. Further, Anthem appears to have carefully crafted a position for Louro that excludes the business segments and primary spheres of responsibility he held at United. Plaintiffs have not offered any clear indication of harm, aside from the unactionable injury of losing a valued employee to a competitor and conclusory statements about inevitable disclosure and market competition.

However, Louro will undoubtedly be harmed by ongoing restraints on his ability to pursue his chosen career. Accordingly, the balance of harms favors Louro.

### D. Public Interest

With respect to the restrictive covenants, this factor is neutral. As with other such cases, "'[t]his case implicates primarily business interests, not public rights.'" *Screen Printing Supply Co. v. Dalpe*, 386 F.Supp. 3d 1037, 1057 (quoting *Prime Therapeutics*, 354 F. Supp. 3d at 975).

## CONCLUSION

The Court finds that Plaintiffs at this time have not demonstrated likelihood of success on the merits or irreparable harm, that the balance of harms favors Louro, and that the extraordinary remedy of a preliminary injunction is inappropriate here.

## ORDER

Based on the foregoing, and the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion for Preliminary Injunction [Docket No. 4] is **DENIED**.

2. The Temporary Restraining Order issued on January 7, 2021 [Docket No. 18] is **DISSOLVED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

-19-

DATED: February 12, 2021                  _____
at Minneapolis, Minnesota.                          JOHN R. TUNHEIM
                                                                       Chief Judge
                                           United States District Court